RONALD J. HOLLAND (SBN 148687)
rjholland@mwe.com
PHILIP SHECTER (SBN 300661)
pshecter@mwe.com
ALICE KWAK (SBN 312939)
akwak@mwe.com
**MCDERMOTT WILL & EMERY LLP**
415 Mission St Suite 5600
San Francisco, CA  94105-2533
Telephone:  +1 628 218 3800
Facsimile:  +1 628 877 0107

Attorneys for Defendant
KINKISHARYO INTERNATIONAL, L.L.C.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOE ARMENDARIZ individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KINKISHARYO INTERNATIONAL, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>[Los Angeles Superior Court Case No. 19STCV32237]<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION**<br><br>[28 U.S.C. §§ 1331, 1332(d), 1441, 1446, 1453]<br><br>Complaint Filed: September 11, 2019 |

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant KINKISHARYO INTERNATIONAL, L.L.C. ("Kinkisharyo" or "Defendant"), hereby removes the action *Noe Armendariz v. Kinkisharyo International, LLC et al.*, originally commenced in the Superior Court of the State of California in and for the County of Los Angeles, Case No. 19STCV32237, to the United States District Court for the Central District of California.

Removal is based on the Class Action Fairness Act of 2005 ("CAFA"). This Court has original subject matter jurisdiction over Plaintiff's lawsuit under 28 U.S.C. sections 1332(d), 1441, 1453 and 1446, because minimal diversity exists and the amount in controversy exceeds $5,000,000.

This Court also has original jurisdiction over this action because of the existence of a federal question. Plaintiff seeks to represent putative class members, other than himself, whose employment with Defendant was subject to a collective bargaining agreement ("CBA"), and the alleged conduct of which Plaintiff complains is subject to the CBA for the majority of the class. As such, Plaintiff's class claims are substantially dependent upon the interpretation of a CBA. Plaintiff's class claims are, therefore, preempted under Section 301 of the Labor Management Relations Act ("LMRA").

In support of this removal, Defendant states the following:

## I.

## BACKGROUND AND SUMMARY OF PLEADINGS

1. Plaintiff NOE ARMENDARIZ ("Plaintiff") is a former employee of Kinkisharyo. Plaintiff was employed by Defendant from around July 2017 to August 2019 as a burning technician.

DEFENDANT'S NOTICE OF REMOVAL

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.    On September 11, 2019, Plaintiff individually and on behalf of all persons similarly situated, filed a Complaint in the Superior Court of California, County of Los Angeles, Case No. 19STCV32237 (the "Complaint").  In the Complaint, Plaintiff asserts eight causes of action arising out of his employment with Defendant:  (1) failure to pay minimum and regular rate wages; (2) failure to pay overtime compensation; (3) failure to provide meal periods; (4) failure to authorize and permit rest breaks; (5) failure to indemnify necessary business expenses; (6) failure to timely pay final wages at termination; (7) failure to provide accurate itemized wage statements; and (8) unfair business practices.  A true and correct copy of the Complaint is attached as **Exhibit A.**

3.    Copies of the Complaint; Summons; Civil Cover Sheet; and Notice of Case Assignment were served on Defendant on September 12, 2019.  True and correct copies of the Complaint; Summons; Civil Cover Sheet; and Notice of Case Assignment served on Defendant are attached as **Exhibits A-D**, respectively.

**II.**

**STATEMENT OF JURISDICTION UNDER CAFA**

4.    CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

5.    This Court has jurisdiction over this case under CAFA.  28 U.S.C. § 1332(d).  This case is properly removed under 28 U.S.C. section 1441(a) because it is a civil class action where (1) the proposed class contains at least 100 members; (2) the defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000 and; (4) there is diversity between at least one class member and one defendant.

6.    CAFA's minimal diversity requirement is satisfied when (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least

- 2 -
DEFENDANT'S NOTICE OF REMOVAL

one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. 28 U.S.C. § 1332(d).

7. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

8. Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014). Rather, "[a] defendant's notice of removal need include only a plausible allegation" that the jurisdictional facts exists. *Id.* at 554. Evidence is required "*only* when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* (emphasis added).

9. The United State Supreme Court in *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Id.* (emphasis added) (citations omitted). Following *Dart Cherokee*, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 *broadly in favor of removal . . . .*" *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (emphasis added). *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively."); *see also Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 929 (9th Cir. 2015) (finding, in light of *Dart Cherokee*, the district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction'"); *Moppin v. Los Robles Reg'l Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 WL 5618872 at *2 (C.D. Cal. Sept. 24, 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").

**A.**

DEFENDANT'S NOTICE OF REMOVAL

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Minimum Diversity Of Citizenship Exists Here**

10.    CAFA requires minimum diversity of citizenship, pursuant to 28 U.S.C. section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

11.    Defendant is informed and believes, and on that basis alleges, that Plaintiff is, and was at the time the State Court Action was commenced, a citizen of the State of California within the meaning of 28 U.S.C. § 1332(d).  *See* Exhibit A (Complaint) ¶ 7 (stating that Plaintiff is a California resident).  An individual is a citizen of his state of domicile.  *Munoz v. Small Bus. Admin.*, 644 F.2d 1361, 1365 (9th Cir. 1981).  Although no evidence of domicile is required at the notice of removal stage, *cf. Dart Cherokee*, 135 S. Ct. at 554, "[p]roof of residence in a state is usually thought prima facie evidence of domicile."  *Bradley Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1951); *see Barbosa v. Transp. Drivers, Inc.*, No. ED CV 15-1834-DMG (DTBx), 2015 WL 9272828 at *2 (C.D. Cal. Dec. 18, 2015) ("[A] person's residence is prima facie evidence of his or her place of domicile for purposes of diversity jurisdiction . . . ." (citation omitted)).  Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change."  *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013).  Accordingly, for purposes of determining diversity, Plaintiff was a citizen of California at the time he filed the Complaint.

12.    For diversity purposes, a limited liability company "is a citizen of every state of which its owners/members are citizens."  *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

13.     Here, Defendant, a limited liability company, has a single member: Kinki Sharyo Co., Ltd. ("KSJ"). *See* Declaration of Melissa Rath filed herewith ("Rath Decl.") ¶¶ 2–3.  Defendant is therefore a citizen of every state and foreign state of which KSJ is a citizen.

14.     In *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93.

15.     Under this standard, KSJ is a citizen of Japan because it is incorporated and maintains its corporate headquarters there.  Defendant employees the vast majority of its corporate and executive officers in Japan.  Defendant conducts the vast majority of its administrative functions in Japan.  The actual center of direction, control and coordination for Defendant takes place in Japan as well.  These facts were true at the time this action was initiated and remain true at the time of this removal.

16.     The presence of "Doe" defendants has no bearing on diversity with respect to removal.  *See* 28 U.S.C. § 1441(b); *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).

17.     Because Plaintiff is a citizen of the State of California and Defendant is a citizen of Japan, minimum diversity requirement under CAFA is satisfied.

**B.**

**The Proposed Class Consists Of At Least 100 Members**

18.     This action has been styled as a California class action under California Code of Civil Procedure section 382.  Exhibit A (Complaint) ¶ 13.  California Code of

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

Civil Procedure section 382 is a state statute authorizing an action to be brought by one or more representative persons as a class action.

19.    Plaintiff's Complaint proposes a single class:  "All persons who worked for any Defendants in California as an hourly-paid, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent."

20.    Based on its investigation thus far, Defendant has determined, and hereby alleges, that there are approximately 788 putative class members during the period beginning on the date four (4) years before the filing of the Complaint through to the time of filing of this Notice of Removal.  Rath Decl. ¶ 5.  Therefore, the proposed class consists of a least 100 members.

### C.

### The Amount in Controversy Exceeds The $5,000,000 Required Under CAFA

21.    Without making any admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of himself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

22.    A defendant can establish the amount in controversy by setting forth a plausible allegation in the notice of removal that the amount placed in controversy by Plaintiff exceeds the jurisdictional minimum.  *Dart Cherokee*, 135 S. Ct. at 554.

23.    CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the aggregate amount in controversy for all class members exceeds $5,000,000.  28 U.S.C. § 1332(d).  By demonstrating that the actual amount in controversy exceeds the threshold, Defendant does not concede the validity of Plaintiff's claims or the likelihood that Plaintiff will recover anything.  *See Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe.").  Nor does Defendant waive its right to ultimately

DEFENDANT'S NOTICE OF REMOVAL

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of his claims.

24. Plaintiff's alleged damages for a portion of their wage and hour claims are calculated as follows:

25. **Minimum Wage Claim (First Cause of Action):** Plaintiff alleges that "Defendant frequently paid Plaintiff and the Class less than all their work time." Exhibit A (Complaint) ¶ 15. Plaintiff alleges he and the putative class "sometimes, but not always, worked after hours to complete reports." *Id.* ¶ 16. Plaintiff alleges he and the putative class "were required to arrive approximately 5 to 10 minutes prior to their scheduled shifts so that they could go through the security checkpoint when entering" and that they "sometimes wait[ed] for trains to pass before crossing to get to the work area. Accordingly, Plaintiff and the Class were required to work off the clock, without compensation." *Id.* Plaintiff therefore claims he and the putative class are "entitled to seek recovery of all unpaid minimum wages . . . ." *Id.* ¶ 41.

26. Based on defendant's investigation and records, Defendant employed approximately 788 non-exempt employees in California within the four (4) years of the filing of the Complaint. Rath Decl. ¶ 5.

27. Based on Defendant's investigation and records, in the four years preceding the filing of Plaintiff's Complaint, the putative class members worked approximately 400 days during the putative class period. Rath Decl. ¶ 7.

28. Based on Defendant's investigation and records, in the four years preceding the filing of Plaintiff's Complaint, the putative class members had an average hourly rate of pay of $21.08. Rath Decl. ¶ 8.

29. To ensure a conservative calculation of damages, Defendant assumes that each putative class member worked, but was not compensated, for the 5 minutes of time per day that Plaintiff alleges they were "required to arrive . . . prior to their scheduled shifts . . . [to] go through the security checkpoint . . . ." Exhibit A (Complaint) ¶ 16. This estimate does not include the time Plaintiff alleges the

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S NOTICE OF REMOVAL

putative class members spent "after hours completing reports" or "waiting for trains to pass before crossing to get to the work area." *Id.*

30.    Therefore, Defendant assumes each of the approximately 788 putative class members were entitled to receive 5 minutes of unpaid wages for each of the average 400 days they worked during the putative class period, at the average hourly rate of pay of $21.08.  Plaintiff's minimum wage claim places, at minimum, approximately **$553,701** in controversy:

788 [putative class members]

x 0.083 [hours, or the equivalent of 5 minutes]

x 400 [average days worked]

x $21.08 [average hourly rate of pay]

= $553,701.

31.    **Meal Period Claim (Third Cause of Action):**  Plaintiff alleges that he and the putative class members "were required to work for periods longer than five hours without an uninterrupted meal period of not less than thirty minutes and/or rest period, and that "Defendants regularly failed to provide Plaintiff and the Class with both meal periods as required by California law."  Exhibit A (Complaint) ¶ 53. Plaintiff therefore claims that he and the putative class are "entitled to be paid one hour of additional wages for each workday he or she was not provided with all required meal periods(s) plus interest thereon" under California Labor Code section 226.7.  *Id.* ¶ 54.

32.    Based on Defendant's investigation and records, Defendant employed approximately 788 non-exempt employees in California within the four years of the filing of the Complaint.  Rath Decl. ¶ 5.

33.    Based on Defendant's investigation and records, in the four years preceding the filing of Plaintiff's Complaint, the putative class members worked approximately 400 days during the putative class period and worked an average of around 9.07 hours per workday.  Rath Decl. ¶¶ 6–7.

DEFENDANT'S NOTICE OF REMOVAL

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

34.     Based on Defendant's investigation and records, in the four years preceding the filing of Plaintiff's Complaint, the putative class members had an average hourly rate of pay of $21.08.   Rath Decl. ¶ 8.

35.     Defendant assumes each of the approximately 788 putative class members were entitled to but did not receive a compliant meal period for each of the average 400 days they worked during the putative class period, and would be entitled to receive a premium equivalent to one hour's pay for each missed meal period (at the average hourly rate of pay of $21.08).  Therefore, Plaintiff's meal period claim places, at minimum, approximately **$6,644,416** controversy:

788 [putative class members]

x $21.08 [average hourly rate of pay]

x 400 [average days worked]

= $6,644,416.

36.     **Rest Period Claim (Fourth Cause of Action):**  Plaintiff alleges that Defendant failed to authorize Plaintiff and the Class to take breaks, regardless of whether employees worked more than 4 hours in a workday"  Exhibit A (Complaint) ¶ 57.  Plaintiff therefore claims that he and the putative class "are entitled to be paid one hour of premium wage rate for each workday he or she was not provided with all required rest break(s) plus interest thereon." *Id.* ¶ 58.

37.     Defendant assumes each of the approximately 788 putative class members were entitled to but did not receive a compliant rest period for each of the average 400 days they worked during the putative class period, and would be entitled to receive a premium equivalent to one hour's pay for each missed rest period (at the average hourly rate of pay of $21.08).  Thus, Plaintiff's rest period claim places, at minimum, approximately **$6,644,416** in controversy:

788 [putative class members]

x $21.08 [average hourly rate of pay]

x 400 [average days worked]

DEFENDANT'S NOTICE OF REMOVAL

= $6,644,416.

38.   **Waiting Time Penalties (Sixth Cause of Action):**   Plaintiff alleges that Defendant intentionally and willfully failed to pay Plaintiff and the putative class members who are no longer employed by Defendant "their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendant's employ."  Exhibit A (Complaint) ¶ 66.  Plaintiff therefore claims that he and the putative class "are entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days maximum pursuant to California Labor Code section 203."  *Id.* ¶ 68.

39.   Based on Defendant's investigation and records, approximately 475 putative class members' employment with Defendant ended within three years of the filing of Plaintiff's Complaint.  Rath Decl. ¶ 6.

40.   To ensure a conservative calculation of damages for waiting time penalties, Defendant assumes that each of the approximately 475 former employees in were paid at the average rate of pay (*i.e.*, $21.08), and worked only 8 hours a day. Plaintiff's waiting time penalty claim places, at minimum, approximately **$2,403,120** in controversy:

475 [hourly, non-exempt employees]

x $21.08 [average hourly rate of pay]

x 8 [hours per day]

x 30 [days]

= $2,403,120.

41.   **Attorneys' Fees:**  Plaintiff seek to recover attorneys' fees.  Exhibit A (Complaint) at Prayer for Relief ¶¶ 8, 13, 18, 23, 28, 33, 38, 43.  Plaintiff's claim for attorneys' fees must be included in the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").  Typically,

- 10 -

courts use a 25 percent benchmark when calculating the attorney's fees in controversy for purposes of CAFA.  *See, e.g.*, *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465 at *6–7  (N.D. Cal. Mar. 1, 2012); *Marshall v. G2 Secure Staff, LLC*, No. 2:14-cv-04322-ODW(MANx), 2014 WL 3506608 at *3 (C.D. Cal. July 14, 2014); *Rodriguez v. Cleansource, Inc.*, No. 14-CV-0789-L(DHB), 2014 WL 3818304 at *4 (S.D. Cal. Aug. 4, 2014).

42.    For purposes of ensuring the most conservative calculation of attorneys' fees, Defendant uses the standard 25 percent benchmark and assume that Plaintiff will only recover attorneys' fees based on the meal and rest break claims and waiting time penalties calculated in Paragraphs 30, 35, 37 and 40.  Plaintiff's claim for attorneys' fees place, at minimum, **$4,061,413** in controversy:

$16,245,653[minimum wage damages, meal and rest break damages, waiting time penalties]

x 0.25 [standard benchmark used for removal]

= **$4,061,413**.

43.    **Total:**  The total amount in controversy based solely on Plaintiff's claims for minimum wages, meal and rest period premiums, waiting time penalties and attorneys' fees is, at minimum, **$20,307,066**.

44.    These calculations do not account for Plaintiff's claims for unpaid wages for overtime, wage statement penalties, or unreimbursed business expenses.  These claims will increase the amount in controversy even further past the jurisdictional threshold.

45.    Finally, while Defendant would be justified in using a 100 percent violation rate in computing the amount in controversy based on the nature of the pleaded claims, Defendant uses a significantly lower violation rate here—33 percent. *See Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.")  Here,

DEFENDANT'S NOTICE OF REMOVAL

Plaintiff complains that Defendant had a pattern and practice of failing to pay minimum wage for all hours worked, provide/authorize meal and rest periods and provide accurate wage statements.  Exhibit A (Complaint) ¶¶ 15, 17–20.  Specifically, Plaintiff alleges the putative class members were "required to arrive approximately 5 to 10 minutes prior to their scheduled shifts," "regularly required [them] to work" without providing legally compliant meal periods, and "regularly, but not always, required [them] to work" without authorizing and permitting legally compliant rest periods.  *Id.* ¶¶ 16, 18–19.  Therefore, it is reasonable to assume a 33 percent violation rate for the minimum wage, meal and rest period claims, as well as the waiting time penalties claim, which are derivative of the minimum wage and meal and rest period claims.

46.    A 33 percent violation rate in computing the amount in controversy is particularly appropriate considering that the amount in controversy does not take into account all of Plaintiffs' eight causes of actions.  Thus, as Defendant's calculations already assume a low violation rate, further discounting of the amount in controversy is not justified.

47.    **Amount in Controversy Threshold is Met:**  Using a 33 percent violation rate, Defendant alleges that the amount placed in controversy by Plaintiff is now at the time of this removal, and was at the institution of this civil action, at least **$6,769,022**.  This is greater than the jurisdictional amount of $5,000,000 required by CAFA.

**D.**

**No CAFA Exceptions Apply**

48.    CAFA contains a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(5).  However, none of these exceptions are applicable here.

49.    The first is a discretionary exception based on the number of putative class members found in the state where the action was filed.  *See* 28 U.S.C.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 12 -

DEFENDANT'S NOTICE OF REMOVAL

§ 1332(d)(3).  However, the exception only applies where the "primary defendants are citizens of the State in which the action was originally filed."  Here, the action was originally filed in California and, as described above, Defendant is not a citizen of California.  Thus, this exception does not apply.

50.     Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of jurisdiction, based on the number of putative class members in the state in which the action was filed.  However, this exception, too, only applies where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed."  *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II) and 1332(d)(4)(B).  Given that this action was originally filed in California, and Defendant is not a California citizen, these exceptions also do not apply.

51.     Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions for defendants who are government entities, or putative classes which number less than 100 in the aggregate.  *See* 28 U.S.C. §§ 1332(d)(5)(A)-(B).  Given that Defendant is not a governmental entity, and the proposed class exceeds 100 members, these exceptions also do not apply.

**IV.**

**<u>STATEMENT OF FEDERAL QUESTION JURISDICTION</u>**

52.     This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action that presents a federal question.

53.     Plaintiff's claims are either based upon or preempted by federal law, specifically Section 301 of the LMRA ("Section 301").  29 U.S.C. § 185.  Under Section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in a district court for the United States having jurisdiction of the parties without regard to the amount in controversy or without regard to the citizenship of the parties." *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000).

54.    Section 301 of the LMRA provides a basis for federal jurisdiction, and authorizes federal courts to develop a federal common law of CBA interpretation. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988).  To ensure uniform interpretations of collective bargaining agreements, federal common law preempts the use of state law in collective bargaining agreement interpretation and enforcement.  *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. V. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962); *Lingle*, 486 U.S. at 411.

55.    Section 301 has specifically been held to preempt California state law claims that are substantially dependent upon interpretation of a CBA.  *Firestone*, 219 F.3d at 1066-67 (claim preempted by Section 301 where the CBA had to be interpreted to resolve the plaintiff's wage claims).  This remains true even where interpretation was required to evaluate the employer's defense to a plaintiff's state law cause of action.  *See Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 769 (2003) (claim for unpaid wages preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled . . . to wages at the level set by the CBA").

56.    Adjudicating Plaintiff's class action Complaint will require interpretation of the CBA.  Thus, Section 301 preempts these causes of action.  *See, e.g.*, *Lingle*, 486 U.S. at 405-06 ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted").

**A.**

**<u>Putative Class Members' Employments Were Governed by a CBA</u>.**

57.    Plaintiff seeks to represent "[a]ll persons who worked for any Defendants in California as an hourly-paid, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent."  While Plaintiff's employment was not covered by a CBA, the majority of the putative class Plaintiff seeks to represent were or are members of a bargaining unit represented by the International Brothers of Electrical Workers, Local 11 (the "Union").  Rath Decl. ¶ 9. Specifically, around 78 percent of

DEFENDANT'S NOTICE OF REMOVAL

the putative class members were Union members. *Id.* Accordingly, the terms and conditions of putative class members' employments were subject to a CBA between Kinkisharyo and the Union.

58. At all relevant times alleged in the Complaint, Kinkisharyo has been, and is, a company engaged in commerce and in an industry affecting commerce within the meaning of Sections 2(2), 2(6), and 2(7) of the NLRA and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(2), (6), (7) and 185(a).

59. The Union is a labor organization in which certain employees of Kinkisharyo participate and which exists for the purpose of dealing with employees concerning grievances, labor disputes, wages, rates of pay, hours of employment, conditions of work, discipline, and discharge. At all relevant times, the Union has been, and is, a labor organization within the meaning of Section 2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

60. Article 2 of the CBA specifically recognizes the Union as the exclusive representative for covered employees for the purposes of collective bargaining to establish rates of pay, hours of work and other conditions of employment. Article 7 of the CBA governs working hours, overtime, meal and rest periods. Article 17 of the CBA governs the applicable wage rates.

61. Thus, Plaintiff's class action claims require substantial interpretation of a CBA between an employer and a union, including but not limited to Article 7. Accordingly, the action is also entirely preempted by Section 301 of the LMRA, 29 U.S.C. § 185.

**B.**

**Plaintiff's Claims are Preempted by the LMRA Because They Require Substantial Interpretation of a CBA.**

**1.**

**Plaintiff's Failure to Reference Section 301 of the LMRA in His Complaint Does Not Preclude Removal.**

- 15 -
DEFENDANT'S NOTICE OF REMOVAL

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

62.    The Complaint omits the fact that the majority of the putative class members were members of the Union and employed by Kinkisharyo through a CBA. However, a plaintiff may not be permitted to "artfully plead" his complaint to conceal the true nature of the complaint." *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993,997 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted even though operative complaint made no mention of a collective bargaining agreement). Thus, the fact that Plaintiff has not made specific reference to Section 301 in their Complaint does not preclude removal. The Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.,* 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir. 1983), *overruled in part on other grounds in Moore-Thomas v. Alaska Airlines, Inc.,* 553 F.3d 1241 (9th Cir. 2009).

63.    An artfully pled state law claim is properly "re-characterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 of the LMRA "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

64.    Here, the claims asserted in Plaintiff's class action Complaint are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on an analysis and interpretation of a collective bargaining agreement. *See Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991). To analyze Plaintiff's claims asserted on behalf of putative class members who were union workers, therefore, the Court will necessarily need to interpret the provisions of the relevant CBA.

**2.**

DEFENDANT'S NOTICE OF REMOVAL

**Resolution of Plaintiff's Claims Will Require Substantial Interpretation of Various Provisions of the CBA.**

65.     The Court cannot simply look to state law to resolve Plaintiff's artfully pled claims for breach of a CBA.  Thus, Plaintiff's claims cannot be adjudicated without interpretation of numerous CBA provisions that govern the putative class members' employment.

66.     Plaintiff asserts the following claims: (1) unpaid minimum wage; (2) unpaid overtime; (3) unpaid meal period premiums; (4) unpaid rest period premiums; (5) failure to reimburse for necessary business expenses; (6) final wages not timely paid; (7) non-compliant wage statements; and (8) unfair competition.  The applicable CBA contains specific language governing time worked, wages, overtime, pay periods, and meal and rest periods.  The CBA also provides for a grievance process and requires binding arbitration to resolve any disputes arising under the CBA, including disputes as to the interpretation of application of any of the express provisions of the CBA.  Resolution of Plaintiff's claim will require the Court to interpret, at a minimum, all of these provisions.

67.     **Wages, Hours, and Overtime:**  The CBA sets forth the parties' mutual agreement regarding all issues pertaining to employee wages, including but not limited to pay periods, pay for overtime, and applicable wage rates.  The focus of Plaintiff's wage claims is that Plaintiff and putative class members were not compensated for all time under the control of Defendant.  Assuming, *arguendo*, that Plaintiff's class claims are valid, the CBA expressly provides for compensation of all hours worked, including overtime.  As for the method and timing of payments, Article 3, Section 3 of the CBA states that "[t]he Employer shall have a regular designated payday for all Employees, which may be changed with two weeks' notice to the Union so long as the Employer does not change the pay period to less than two pay periods a month."  Rath Decl., Ex. 1 at 9.  Article 7, Section 3(b) of the CBA provides different pay arrangements for daily overtime.  *Id.*, Ex. 1 at 7.  Importantly, the CBA

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 17 -
DEFENDANT'S NOTICE OF REMOVAL

expressly provides that should there be a dispute "regarding whether an Employee is paid untimely or inaccurately under applicable state or federal law (*i.e.*, minimum wage, overtime, failure to pay wages) the sole and exclusive remedy shall be the binding grievance and arbitration procedures set forth in Article. In the event that the parties cannot resolve the matter informally under that procedure, such dispute shall be submitted to binding arbitration." *Id.*, Ex. 1 at 9. Additionally, Article 7, Section 1 of the CBA provides that "[a]ll Employees covered by this agreement shall be paid for all time spent in service of the Employer. Time shall be computed from the time that the Employee commences work until he or she clocks out from duty." *Id*, Ex. 1 at 6. To the extent Plaintiff has class claims regarding untimely payment of employee wages, the CBA will need to be interpreted in order for the Court to determine whether the exemption built into Labor Code section 204(c), which provides, "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees" applies here. 68. **Meal and Rest Periods:** The CBA provides for meal and rest periods, and expressly lays out the conditions under which employees are entitled to such breaks. Moreover, the CBA expressly calls for final and binding arbitration for any and all disputes concerning meal and rest periods, providing, "[a]ny complaint arising in connection with the application or interpretation of this Article, including, but not limited to claims regarding alleged missed meal and rest periods and/or alleged payments for missed meal and rest periods shall be *exclusively* subject to the grievance procedure and arbitration procedure set forth in this Agreement and shall not be subject to resolution by way of court, a jury trial, or an administrative proceeding . . . ." *Id.*, Ex. 1 at 8. Thus, putative class members' rights to rest and meal periods substantially depend on an analysis of the CBA.

69. **Grievance and Arbitration Procedure:** As set forth above, the grievance and arbitration procedure laid out in the CBA covers any "dispute between the Employer and the Union on behalf of any Employee (other than a probationary

- 18 -
DEFENDANT'S NOTICE OF REMOVAL

Employee) regarding the interpretation of any express provision of the Agreement." *Id.*, Ex. 1 at 13.  Further, Plaintiff's claims for wages asserted on behalf of putative class members who are union workers must be arbitrated, as the CBA requires arbitration of claims as the exclusive remedy for any claims relating to wages, such as claims relating to overtime pay and meal and rest periods.  The promotion of extra-judicial dispute resolution is another purpose of Section 301 preemption.  State court lawsuits properly removed on preemption grounds may then be deferred to arbitration, if the parties to the CBA have so agreed.  *See Livadas v. Bradshaw*, 512 U.S. 107, 142 fn. 18 (1994).  Here, the parties have so agreed, and the claims are therefore subject to arbitration as discussed above.  Accordingly, an alleged violation of the CBA is subject to the grievance procedures set forth therein.  As all of Plaintiff's class claims asserted on behalf of putative class members who are union workers are in essence alleged violations of the CBA, the Court will necessarily have to interpret the grievance and arbitration provisions to analyze Plaintiff's claims in this case.  That is, the Court will be required to determine whether the putative class members whose employments were governed by the CBA first required to exhaust the grievance procedures, whether they did in fact exhaust those procedures, and whether the parties agreed to arbitrate all or some of putative class members' claims—which are all questions reserved for federal courts under the LMRA.

70.    Accordingly, Plaintiff's class claims are substantially dependent upon the interpretation of the foregoing CBA terms and provisions.  In fact, those terms and provisions govern nearly all of the conduct that forms the basis for Plaintiff's Complaint, and thus are essential to the resolution of Plaintiff's class claims.  As such, each of Plaintiff's claims claims arises under Section 301 of the LMRA, and is therefore preempted by federal law.  Removal to federal court is warranted.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**V.**

**TIMELINESS OF REMOVAL**

71.    Under 28 U.S.C. section 1446(b)(1), a notice of removal is timely if it is filed with 30 days of the defendant's receipt of a copy of the initial pleading setting forth the claim for relief upon which the removed action is based.  The 30-day window does not begin to run until formal service of a summons and complaint. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).  Defendant was served with a summons and copy of Plaintiff's Complaint on September 12, 2019. therefore, this Notice of Removal is timely.[1]

**VI.**

**JOINDER**

72.    Defendant is not aware of any other defendant having been served with a copy of Plaintiff's Complaint, and the requirements of 28 U.S.C. § 1446(b)(2)(A) are met.

**VII.**

**VENUE**

73.    Venue is proper in this Court pursuant to 28 U.S.C. § 84(c) and 1391.

**VIII.**

**NOTICE TO PLAINTIFF**

74.    This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Los Angeles.

75.    In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders served upon such Defendant" or filed by Defendant are attached hereto as exhibits, including the Complaint (**Exhibit A**); the Summons

---

[1]    Thirty days from September 12, 2019 is October 12, 2019.  Because October 12, 2019 is a Saturday, Defendant's deadline is extended to the "next day that is not a Saturday, Sunday, or legal holiday."  Fed. R. Civ. P. 6(a)(1).  Because Monday, October 14, 2019 is a federal holiday, Defendant's deadline to file its Notice of Removal is Tuesday, October 15, 2019.

- 20 -

DEFENDANT'S NOTICE OF REMOVAL

(**Exhibit B**); the Civil Cover Sheet (**Exhibit C**); the Notice of Case Assignment (**Exhibit D)**; Minute Order re: Newly Filed class Action (**Exhibit E**); the Certificate of Mailing (**Exhibit F**); Proof of Personal Service (**Exhibit G**); Plaintiffs' Notice of Complex Determination and Notice of Initial Status Conference (**Exhibit H)**; and Defendant's Answer (**Exhibit I**).

**WHEREFORE**, Defendants requests that the above action pending before the Superior Court of the State of California for the County of Los Angeles be removed to the United States District Court for the Central District of California.

Dated: October 11, 2019          **MCDERMOTT WILL & EMERY LLP**

By:   /r/ Ronald J. Holland
      RONALD J. HOLLAND
      PHILIP SHECTER
      ALICE KWAK
      Attorneys for Defendant
      KINKISHARYO INTERNATIONAL, L.L.C.

- 21 -
DEFENDANT'S NOTICE OF REMOVAL